## UNITED STATES *v.* IRON SILVER MIN. Co.[1]

*(Circuit Court, D. Colorado. July 28, 1885.)*

1. MINERAL LAND—FRAUDULENT PATENT—EVIDENCE.

Before a court will set aside a patent to mineral land on the ground of fraud, it must appear, not merely that the applicant was mistaken as to the character of the land, but that the representations in regard thereto were falsely and fraudulently made; and this fact must clearly appear.

2. SAME—WHAT WORK IS TO BE CONSIDERED IN ESTIMATING AMOUNT ACTUALLY DONE.

Work done for the purpose of discovering mineral, whatever the particular form or character of the deposit which is the object of the search, is within the spirit of the statute.

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

On Final Hearing.

*A. W. Brazee*, U. S. Dist. Atty., for the United States.

*C. G. Symes*, for defendant.

BREWER, J. This is a proceeding in equity to set aside patents for two placer mines, known, respectively, as the Stinson and the Fanchon placer mines. On demurrer the bill was sustained. See 5 McCrary, 266; S. C. 16 FED. REP. 810. See, also, supporting the opinion therein expressed, *U. S.* v. *Minor*, 5 Sup. Ct. Rep. 836, decided in the supreme court, March 30, 1885. Answer was thereupon filed, and the case is now submitted on pleadings and proof. The charge in the bill is fraud in obtaining these patents. It is charged that the ground embraced within these patents was not placer mining ground; that several valuable leads or lodes containing mineral in rock or placer existed thereon; that both of these facts were known to the applicant and patentee; that the ground was covered with valuable timber; that he falsely and fraudulently represented to the land-officers that there were no veins, leads, or lodes, and that it was placer mining ground, and that he had done the requisite work.

The testimony discloses that in 1879 Sawyer, the patentee, prospected on this ground and located, having claimed to have discovered some four mineral veins. After he had filed and recorded his location certificate he became embarrassed financially, and called on Mr. Stevens, now one of the principal owners of the Iron Silver mine, for assistance. There was a fine growth of timber on the premises. Mr. Stevens went over with him and examined. Upon his suggestion Sawyer determined to disregard the locations already made, and to file an application for a patent upon an enlarged territory as placer mining ground; Mr. Stevens promising to advance him money upon an agreement that when the patents were obtained the property should be conveyed to him, less certain specified portions. In pursuance of this determination applications were made, in which it was set forth, that there were no known leads or lodes, proofs were duly made, and in due course of time patents issued, and thereafter conveyance of the ground to the Iron Silver Mining Company, in accordance with the prior arrangement.

I think it obvious from the testimony that the main object of Stevens was to secure the timber. As the proofs were duly and legally made, the proceedings apparently all regular, and no adverse claims presented to the ground finally patented, I take the rule to be that, before a court will set aside a patent, it must appear, not merely that the applicant was mistaken, but that the representations were falsely and fraudulently made, and that this fact must clearly appear. Of course the first question is, was this placer mining ground? It appears from the testimony that before Sawyer was on the premises, during some two or three years, a little placer mining had been done in Buffalo gulch, which runs up through part of this territory. There was but a limited supply of water in the gulch, flowing par-

tially from a spring, and partially fed from the melting snow. This supply was exhausted before the summer was ended, so that the amount of placer mining done was small, and the proceeds slight.

It appears, also, from the testimony that water could be brought by digging a ditch of some considerable length, and probably at considerable expense. As a matter of fact, since the patent was issued there has been but a trifling amount of placer mining done. Of the many witnesses examined, some call it placer mining grounds, others say that it is not. Witnesses differ, also, as to length and expense of the ditch necessary to bring water into the ground. In view of this conflicting testimony, I do not think that it can be fairly said that it is satisfactorily proved that the ground was not placer mining ground, or that the supply of water was so remote as to make it financially impracticable to bring enough into the ground for mining purposes.

I should have much less hesitation in finding for the defendant on this, were it not for the evident fact, hereinbefore referred to, that the main interest that Stevens, who furnished the money, had in the matter, was in securing the title to this timber. Still, though the parties evidently considered the timber of the most immediate value, it does not follow that they did not in good faith regard this as placer mining ground, and believe the water could be obtained at a reasonable expense.

Again, it is argued by the learned counsel for the government that the fact that Mr. Sawyer had sunk these prospect holes, and filed and recorded location certificates, estopped him from saying there were no known veins, leads, or lodes in the premises. I am not willing to accept this proposition as law, and I am satisfied from the testimony that in these prospect holes he had not discovered any well-defined leads or lodes, but was simply experimenting, hoping by further work, from the indications, to reach such veins. The testimony of the deputy surveyor who surveyed the premises and examined these holes is very clear and positive.

One other question remains. The applicant represented that over $500 worth of work had been done, and the deputy surveyor certified to this fact, and I see no reason, from the testimony, to doubt that this was correct. But I think that included in this work was that done in sinking these prospect holes, when the applicant was evidently trying to find veins, leads, and lodes, and it was earnestly contended that no work done in that direction and with that purpose ought to be counted in the application for the ground as placer mining ground. As counsel for the government well says, suppose the applicant had built on each tract a dwelling-house at a cost of over $500, having done no work of any kind looking to the discovery of mineral; would that come within the spirit of the law? Does it not rather contemplate work done for the purpose of discovering mineral? and, if so, may work done in the hope of discovering a vein or lode be counted as work done for the purpose of securing a placer mine? With some

hesitation I think it may fairly be held that work done for the purpose of discovering mineral, whatever the particular form or character of the deposit which is the object of search, is within the spirit of the statute; and as evidently more than $500 worth of such work was done, it cannot be said that the representation made in this respect was false and fraudulent.

In conclusion, while perhaps at times frauds are perpetrated on the government, and the title to lands improperly taken, yet when, as in this case, the facts as to the character of the ground, the kind of work, as well as the amount done, are fully known to the officers of the government, I think that the courts should be slow in disturbing the title conveyed; and before they do, they should be clearly satisfied that the applicant has intentionally concealed material facts, or made false and fraudulent representations. Questions of doubt should be resolved in favor of the applicant. Entertaining these views, I am constrained, upon the testimony, to order a decree dismissing the bill.