THE S. S. WHITE DENTAL MFG. CO. v. UNITED STATES.

No. 45763.

Court of Claims.

May 1, 1944.

Harry Levine, of New York City, for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, BOOTH, Chief Justice (retired) recalled, and LITTLETON, WHITAKER, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff sues to recover a part of the income and undistributed profits taxes paid by it for the year 1937. It contends that the stated income upon which these taxes were paid was not its proper taxable income, because no deduction was allowed it by reason of the abandonment, in that year, of one of its manufacturing plants.

The plaintiff carried on its manufacturing operations at three plants located at Frankford, Pennsylvania, Northwood, Pennsylvania, and Staten Island, New York. On April 1, 1936, the plaintiff's executive committee, by resolution, decided to transfer the operations of the Northwood plant to the Staten Island factory, and to build at the latter place a new factory, at an estimated cost of $170,000. The resolution provided for subsequent consideration of the transfer of the Frankford operation to Staten Island. It was estimated that if both these operations should be moved, operating economies of $110,000 a year would be achieved, and that the removal of the Northwood plant alone would cost some $24,000 and would produce annual operating economies of $30,649.

On May 22, 1936, the plaintiff contracted for the construction of the new building at Staten Island, at a cost of about $200,000. That building was completed and all the op-

erations of the Northwood plant were removed into it by May 1, 1937, at which time operations at Northwood were abandoned and the plant there was vacated. It was not thereafter used by the plaintiff.

The plaintiff's directors, when they considered these changes in 1936, estimated that the sale or salvage value of the Northwood plant when it would be vacated in 1937 would be $75,000, which was a reasonable estimate. They offered the plant for sale in 1936, and sold it on July 1, 1937, for a net sale price of $83,160.50. On May 1, 1937, when the Northwood plant was vacated, its depreciated value, i. e., its cost to the plaintiff less depreciation previously allowed by the Commissioner of Internal Revenue, was $163,610.71.

The Commissioner has treated the plaintiff's loss in connection with the Northwood plant as a loss on the sale of a capital asset, which, though it amounted to the difference between $163,610.71, the cost less depreciation, and $83,160.50, the net price received at the sale, was, under the statute, deductible for tax purposes only to the extent of $2,000, the plaintiff having had no gains on the sale of capital assets against which the loss could be set over. Revenue Act of 1936, Section 117 (d), 26 U.S.C.A. Int. Rev.Acts, page 875. The plaintiff made a timely claim for refund, which was re-

jected. The claim for refund was, and this suit is, based upon the proposition that Section 23 (f) of the Revenue Act, 26 U.S.C.A. Int.Rev.Acts, page 828, is applicable, which says that there shall be allowed as a deduction from gross income:

"In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

Since deductions taken for losses which come under Section 23 (f) are not limited to a maximum of $2,000, the plaintiff is claiming that it should have been allowed to deduct the entire amount of its loss from its otherwise taxable income. The position of the Government here is that taken by the Commissioner of Internal Revenue when he denied the plaintiff's claim for refund, that is, that the plaintiff's loss was a loss incurred in the sale of a capital asset, hence the loss was deductible from taxable income only to the amount of $2,000.

■ Section 23(f), which we have quoted, is of course not very enlightening when taken by itself. Paragraph (j) of the same section shows that losses from sales of capital assets were not meant to be included in it. Article 23(e)–3 of Treasury Regulations 94, promulgated under the Revenue Act of 1936 is reproduced in the footnote.[1] It is the Government's inter-

---

[1] Art. 23 (e)–3. *Loss of useful value.*— When, through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action the difference between the basis (adjusted as provided in section 113 (b) and articles 113 (a) (14)–1, 113 (b)–1, and 113 (b)–2) and the salvage value of the property. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property has been prematurely discarded, as, for example, where an increase in the cost or change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery only when its use as such is permanently abandoned. Any loss to be deductible under this exception must be fully explained in the return of income. The limitations provided in section 117 with respect to the sale or exchange of capital assets have no application to losses due to the discarding of capital assets.

\* \* \* \* \* \* \*

In cases in which depreciable property is disposed of due to causes other than exhaustion, wear and tear, and normal obsolescence, such as casualty, obsolescence other than normal, or sale, a deduction for the difference between the basis of the property (adjusted as provided in section 113 (b) and articles 113 (a) (14)–1, 113 (b)–1, and 114 (b)–2) and its salvage value and/or amount realized upon its disposition may be allowed subject to the limitations provided in the Act upon deductions for losses, but only if it is clearly evident that such disposition was not contemplated in the rate of depreciation. ·

pretation of Section 23(f). Regulations of similar content were promulgated as far back as the Revenue Act of 1918,[2] and have the force of law. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52. We shall therefore ascertain whether the transaction here in question is one of the kind described in the regulation, and therefore within Section 23(f) of the statute.

The first sentence of the regulation seems to describe what plaintiff did with regard to its Northwood plant, reserving for the moment the adverb "suddenly". There was a change in business conditions, as they appeared to the plaintiff's managers in 1936, as compared with the time when they built or acquired the Northwood plant. If there had not been, they would not have been willing to abandon that plant, salvaging it for less than its depreciated value, and spend almost three times the expected salvage recovery in building a new plant to house the Northwood operation. We think the words "change in business conditions" in the Regulations must mean, "in the opinion of the managers of the business." They cannot refer to anything more objective than that, since assets are discarded upon the basis of that opinion, and upon no other basis.

The words "the usefulness in the business of some or all of the capital assets is * * * terminated" must mean terminated in whole or in such part that, in the opinion of the managers of the business, good management calls for their being discarded. Practically never is a capital asset wholly useless when discarded. It is discarded when it becomes relatively uneconomical to continue to use it, when its use is considered in relation to one or more alternatives. This choice was here made by the plaintiff's managers, and their action comes within the quoted language of the regulation.

We now come to the word "suddenly" which precedes the word "terminated" in the language quoted in the preceding paragraph. We think that this word, also, is a relative word. We think it was written to contrast with the word "gradual" which appears in the following sentence in the same paragraph of the regulation: "This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allow-ances are authorized.' If the word "suddenly" means anything more nearly instantaneous than we have suggested, the regulation would practically never be applicable. The language of the whole regulation indicates that it was not intended to be limited to infrequent situations where by legislation or by catastrophe the supply of raw materials, or the market, has been destroyed in a day. Here the relative usefulness of the Northwood plant terminated, not by physical decay, nor by obsolescence, see S. S. White Dental Manufacturing Co. v. United States, 38 F.Supp. 301, 93 Ct.Cl. 469, but by changes in conditions, affecting the plaintiff's business, sufficient to cause the managers to conclude that it would be economical to discard the plant. We think that the word "suddenly" in the regulation is satisfied, though it seems to us to be a rather inept word to express the apparent meaning of the regulation.

The regulation, in its second sentence, speaks of a requirement of "proof of some unforeseen cause by reason of which the property has been prematurely discarded * * *." We think that this language, when read in connection with the next following sentence, means only that the cause of its being discarded must have been unforeseen when the asset was acquired so that depreciation of its cost, on the basis of a short prospective use, would not have been an allowable deduction from income.

In the instant case the Northwood plant was sold within the taxable year in which its use was abandoned, in fact within two months after it was abandoned. We think that is immaterial to our problem. Of course, it made the amount of the loss quite definite, and avoided the necessity of reliance upon estimates as to the salvage value of the abandoned plant. But the loss occurred before the sale. When the plaintiff's directors decided, in 1936, to abandon the Northwood plant, they did not have any contract to sell it. When they built the new Staten Island plant to replace it, they still had no contract to sell it. When they vacated the Northwood plant on May 1, 1937, and abandoned its use, they still had no such contract. They were, in arriving at their decision to abandon, not in the situation of making a choice between keeping and operating the Northwood plant, on the one hand, or accepting an offer which they

---

[2] See Article 143 of Regulations 45.

had in hand to sell that plant and, with that money and more, and in view of other advantages, building a new plant at Staten Island. If that had been the case, we suppose their loss would have been a loss on a sale, which they chose to make because they preferred the price to the plant. But here they first abandoned the plant, taking their chances as to whether and for how much they could sell it. It was thus made useless to them before they sold it. When one discards capital assets, he hopes to sell the discard, and has an opinion or a hope as to how much he will get for it. When and if he sells, he is not selling a current capital asset, but is salvaging a discarded capital asset.

Plaintiff is entitled to recover. Entry of judgment will await the filing of a stipulation by the parties as to the amount of the judgment. It is so ordered.

LITTLETON, Judge, and BOOTH, Chief Justice (retired), recalled, concur.

WHITAKER, Judge, (dissenting).

I am unable to agree with the opinion of the majority.

In Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 16, 60 S.Ct. 371, 373, 84 L.Ed. 542, the plaintiff as a result of a consolidation acquired two title plants. Both of them were efficient plants, but in the hands of plaintiff one was a duplication of the other and so it decided to abandon one. It claimed the right to deduct the value of the one abandoned, less its salvage value, under the provision of the statute providing for a deduction for obsolescence. The Supreme Court denied its claim. It said:

"* * * obsolescence under the Act connotes functional depreciation, as it does in accounting an engineering terminology. More than non-use or disuse is necessary to establish it. To be sure, reasons of economy may cause a management to discard a title plant either where it has become outmoded by improved devices or where it is acquired as a duplicate and therefore is useless. But not every decision of management to abandon facilities or to discontinue their use gives rise to a claim for obsolescence. For obsolescence under the Act requires that the operative cause of the present or growing uselessness arise from external forces which make it desirable or imperative that the property be replaced. * * * Suffice it here to say that no such external causes are present, for the record shows little more than the desire of a management to eliminate one plant which was a needless duplication of another but which functionally was adequate. The fact that fewer employees were required to operate the one retained than the one discarded is inconclusive here. For this is not the case of acquisition of a new plant to take the place of one outmoded or less efficient. Rather the conclusion is irresistible that the plant was discarded only as a proximate result of petitioner's voluntary action in acquiring excess capacity."

Following that case we held in S. S. White Dental Mfg. Co. v. United States, 38 F.Supp. 301, 93 Ct.Cl. 469, that the plaintiff was not entitled to deduct in the year 1936 obsolescence of its Northwood plant, the identical plant here involved. In the former proceeding plaintiff sought to deduct in the year 1936, the year in which it had decided to abandon this plant as soon as additional buildings at its Staten Island plant could be erected, 75 percent of the value of the plant, less its salvage value, and 25 percent in the year 1937. If it was entitled to a deduction on account of obsolescence at all, it was entitled to deduct at least a part of it in the year in which it had decided to abandon its plant. We held it was not entitled to a deduction for obsolescence at all, and that decision, of course, is controlling here on its right to the deduction under the obsolescence section of the statute.

This leaves open only the question as to whether or not it is entitled to the deduction under section 23(f) of the statute, 49 Stat. 1648, 1659, 26 U.S.C.A. Int.Rev.Acts, page 828, which provides for a deduction of "losses sustained during the taxable year and not compensated for by insurance or otherwise."

In Real Estate-Land Title & Trust Co. v. United States, supra, the Supreme Court refused to decide this question because in that case plaintiff's claim for refund was not based upon that section, but upon the obsolescence section.

I am, however, of the opinion that the plaintiff is not entitled to the deduction under this section for the same reason it is not entitled to it under the obsolescence section.

Plaintiff claims the deduction under article 23(e)–3 of Treasury Regulations 94, which was promulgated in explanation of section 23(f) of the statute. This article allows a deduction of "abnormal obso-

lescence." It was promulgated because of the restricted interpretation put upon section 23(*l*) of the statute, 26 U.S.C.A. Int. Rev.Acts, page 829, authorizing the deduction of "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, *including a reasonable allowance for obsolescence.*" (Italics ours.) The Commissioner held that this obsolescence deduction had to be taken annually over the life of the property in anticipation of the time the property would become obsolete. Regulations 94, art. 23 (*l*)–6. To take the deduction the taxpayer had to foresee that the property would become obsolete before its usefulness was exhausted by wear and tear. But, obviously, this did not take care of the case where the property became obsolete unexpectedly, as, for example, where some new and unexpected invention of a new machine outmoded the old, necessitating its abandonment. Not having expected the invention the taxpayer had not taken a deduction for obsolescence of his old machine during the years he had used it, and yet he had to discard it, not because it had worn out, but because it was no longer profitable to use it. To meet this situation article 23(e)–3 was promulgated.

It was intended to take care of unforeseen obsolescence. This seems plain from a reading of it. It speaks of the "sudden" termination of the usefulness of the property due to an "unforeseen cause." It allows the deduction for "causes other than * * * *normal obsolescence,* such as casualty, *obsolescence other than normal,*" etc. (Italics ours.)

The deduction claimed is for obsolescence. In this case it is claimed under article 23(e)–3 as abnormal obsolescence; in the former case it was claimed under 23(*l*) as obsolescence there allowed. Following the Supreme Court's decision in the Real Estate Land Title & Trust Co. case, supra, we held in the former case (38 F.Supp. 301, 93 Ct.Cl. 469) that it was not entitled to the deduction because its abandonment was not the result of "external forces" but only on account of the voluntary act of the management done to effect economy in operation. The same is true in this case. If a deduction for gradual obsolescence can be taken only where the abandonment of the property is a result of external forces, it must follow that abnormal obsolescence can only be taken in the same circumstances.

Plaintiff falls far short of coming within the terms of the Regulation. The property was not abandoned as a result of "some change in business conditions." Its usefulness was not "suddenly terminated" due to some change in business conditions. No "unforeseen cause" brought about its abandonment. No change in business conditions is pointed out. Apparently business conditions had been the same for a number of years. No cause that had not existed for years brought about the sudden termination of the usefulness of the property. Plaintiff voluntarily abandoned the building because it decided to consolidate its operations. The building was still "functionally adequate." It lost its value to plaintiff only because plaintiff decided to transfer its operations elsewhere.

The transaction here was nothing more nor less, in my opinion, than the sale of a capital asset. Plaintiff had a building in Northwood which it did not want and it sold it, and it is entitled only to the deduction provided for on a sale. This is limited by section 117(d) of the Revenue Act of 1936, 49 Stat. 1648, 1692, 26 U.S.C.A. Int. Rev.Acts, page 875, to $2,000.00. This has been allowed it.

I am of opinion that the plaintiff is not entitled to recover and that its petition should be dismissed.

WHALEY, Chief Justice, concurs in the foregoing opinion.