Robert W. HUMMEL and Irene V. Hummel, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 40063.

United States District Court
N. D. California, S. D.

Dec. 17, 1963.

Stark & Champlin, Oakland, Cal., for plaintiffs.

Cecil Poole, U. S. Atty., San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

This is an action by Robert W. Hummel and Irene V. Hummel, his wife, the taxpayers, for the recovery of federal income tax assessed and paid for the year 1958. Trial has been held before the Court and the cause submitted.

The taxpayers had deducted $26,954 as a loss sustained during the taxable

year 1958 within the meaning of the Internal Revenue Code of 1954, 26 U.S.C. § 165(a) and (b) and Treas.Reg. 118, Secs. 39.23(e)–1(6), 3(a) and 3(c).

The claimed loss arose out of the following facts:

In 1956, the taxpayers, who were sole shareholders in a family furniture manufacturing corporation, contracted with Naylor, a building contractor, to build a furniture manufacturing plant on an unimproved portion of certain real property owned by them in San Leandro, California. Construction proceeded to the extent that dirt fill was hauled and placed upon the building site and partial foundation walls were constructed at the front and rear.

Construction of the furniture plant was discontinued by the taxpayers during the year 1956 as the result of a disagreement between the taxpayers and Naylor and was never resumed. Also, the taxpayer, Robert Hummel, was in bad health in 1956 and on advice of his doctor he then began a liquidation of the furniture corporation which was finally wound up in 1958.

Naylor sued the taxpayers for the costs of the partial construction and on March 11, 1958, he recovered a judgment against them for $27,840.43 and court costs of $315.65. The taxpayers paid $26,954.51 in satisfaction of the judgment and also expended a further $1,440 for legal services incurred in the litigation.

The taxpayers deducted these amounts in their joint 1958 return as a loss under IRC (1954) Sec. 165(a) and (b).

Upon audit, Internal Revenue allowed the deduction to the extent that it was allocable to cost of plans for the building, building permits and other miscellaneous items, including costs for the front foundation, but determined that the fill and the rear foundation on the site had not been abandoned and that the allocated cost of these items, $17,477.81, together with $822.32 of the attorney fees, should not have been deducted. Upon this determination, and an adjustment of the tax accordingly, Internal Revenue assessed a deficiency of $8,059.70 for the year 1958. This deficiency was paid and this suit to recover was commenced.

The issue presented is whether the taxpayers realized a loss within the meaning of IRC (1954) Sec. 165(a) and (b), and the Regulations above referred to, with respect to their cost of the fill and the rear wall.

Sec. 165(a) and (b), IRC (1954) provide in substance that an individual taxpayer may deduct any uncompensated loss sustained during the taxable year in a trade or business or in any transaction entered into for profit.

The Regulations, Sec. 39.23 (e)–3, provide in substance that such losses must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed; that when through some change in business conditions, the usefulness in the business of some or all of the assets is suddenly terminated so that the taxpayer discontinues the business or discards such assets permanently from use in such business a loss may be claimed without a sale or other disposition of property in order to establish a loss. This exception to the rule requiring a sale or other disposition of the property in order to establish a loss requires proof of some unforeseen cause by reason of which the property has been prematurely discarded. The exception applies to buildings when they are permanently abandoned or permanently devoted to a radically different use.

It has been held that, where the taxpayer has not relinquished possession of an item, he must prove an "abandonment", i. e., a concurrence of the act of abandonment and the intent to abandon, both of which must be shown from the surrounding circumstances, of such item in order to determine that a loss has occurred in the year of deducting. Neither mere intention alone nor mere non-use alone, is sufficient to accomplish abandonment. Burke v. C. I. R., 32 T.C.

775 (1959) affirmed, 283 F.2d 487 (9th Cir. 1960); Beus v. C. I. R., 261 F.2d 176, 180 (9th Cir. 1958); Talache v. United States, 218 F.2d 491, 498 (9th Cir. 1954), cert. den. 350 U.S. 824, 76 S. Ct. 51, 100 L.Ed. 736 (1955).

■ It has also been held in these cases of claimed loss and abandonment that a deduction is permissible only where there is a complete elimination of all value coupled with recognition by the owner that the item no longer has any utility or worth to him. Commissioner v. McCarthy, 129 F.2d 84 (C.A. 7th Cir.).

In the present case plaintiff relies upon its stoppage of the furniture plant building project in 1956, coupled with taxpayers' retirement from the furniture business and liquidation of the family furniture corporation, as an effective abandonment sufficient to support a tax deduction of the cost of the partial construction.

■ The deduction was not actually taken until 1958 because the taxpayers' liability for those costs was not finally established until the 1958 Naylor judgment. That a deduction, if otherwise proper, may be so deferred under such circumstances has been held in Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538 (1930).

Taxpayers contend that they abandoned the furniture plant building project in October 1956, and that, although no action was taken by them to actually remove the fill or demolish the partial foundation walls, these items were of no value to them and were in fact a net detriment to the property. They did not demolish the walls or remove the fill because they did not want to expend any more money and because they did not have the slightest idea whether any future purchaser or lessee could use them.

The government contends that the taxpayers did not abandon the fill and rear foundation wall, pointing out that the taxpayers permitted them to remain upon the site and that when litigation liens on the real property were eventually removed by payment of the Naylor judgment in 1958, the taxpayers proceeded to advertise the real property on a "Lease—Build to Suit" basis.

In 1960 the site was eventually leased by them for a 25 year term to one Walden who in turn entered into an arrangement with Yale & Towne Co., under which Walden was to construct an industrial building on the site and sub-lease to Yale and Towne Co. Shortly thereafter, October 1960, the taxpayers purchased the Walden interest, assumed his obligations to Yale & Towne and contracted with Lathrop, a building contractor, for construction of the building for Yale and Towne.

Soil reports from plaintiffs' soil engineers were to the effect that the fill on the building site should be removed but could be replaced on the site as compacted fill, and this was eventually done (although to what extent does not appear).

The taxpayers' architect found it possible to eventually use one of the existing foundation walls—the rear 130 foot wall—and to add another 50 feet to it, but the front wall was found to be unusable and was demolished.

Thus, the government contends, the taxpayers did not sufficiently evidence abandonment of the rear wall or the fill; that, further, there was nothing in 1958 to indicate that the rear wall and fill did not have value; that the taxpayers left them on the site because they believed that some future purchaser or lessee of the property might be able to use them and that subsequent events confirmed the taxpayers' belief.

By its failure to question the 1958 deduction for the *front* wall, the government in effect concedes that there was an abandonment in 1958 sufficient to support that deduction by the taxpayers.

■ It is difficult to understand why conduct, which according to the government, was sufficient abandonment to support the 1958 deduction by the taxpayers of their cost of the *front* wall, would not also be a sufficient abandonment to support deduction in that year of their costs

of the fill and the rear wall. Both walls were on the property in 1958 and remained until 1960. The only difference lies in the fact that the front wall was ultimately found to be *un*usuable for the new 1960 construction and was then demolished, while the rear wall happened to be found usable for the new construction. This difference, however, could not and did not become manifest until 1960. It could not have been reasonably anticipated by the taxpayers in 1958 when both walls, as well as the fill, on the building site, must have been regarded by them in the same light. If, as the government impliedly concedes, the taxpayers abandoned the front wall in 1958, the same conclusion would seem to apply also to the fill and rear wall.

■ Apart from this apparently implied concession on the part of the government, we are of the opinion that the evidence in this case is sufficient to show an abandonment by the taxpayers not only of the front wall, but of the fill and rear wall on the building site.

Their retirement from the furniture business, their liquidation of the family furniture corporation for whose particular use the construction project was originally designed and undertaken, coupled with the admitted fact that further work on that project was stopped before it reached the stage of anything reasonably usable as a permanent improvement, and was never resumed, constitute the overt act and the intent essential to show abandonment.

■ To hold that this was insufficient to show abandonment would be to hold in effect that in such situations taxpayers must always go to the added, useless expense of physically removing fill and demolishing walls on real property. That is the only further step these taxpayers could have taken to indicate their abandonment.

■ We do not believe, however, that the IRC (1954) Sec. 165(a) and (b), or the applicable Regulations, require such further useless effort and expense. On the contrary, the Regulations expressly contemplate situations in which taxpayers retain the bare legal title to the property without actually selling, destroying or otherwise disposing of it. The test is merely whether it has been permanently abandoned or permanently devoted to a radically different use. Treas.Reg. 118, Sec. 39.23(e)–3(a) (1953). (See, Commissioner v. Hoffman, 117 F.2d 987, (2d Cir. 1941)).

■ This is a question of fact to be determined from a consideration of all of the facts and surrounding circumstances of the particular case. In Burke v. Commissioner, supra, although the Court affirmed a Tax Court finding against the taxpayer, the record there showed that the taxpayer merely suspended construction of his hotel pending litigation but had definite plans to complete it as soon as the litigation was over. The Court nevertheless recognized that abandonment is an open issue of fact especially where undetached partial improvements to real property are involved. See also: Beus v. Commissioner, supra, Talache v. United States, supra.

Upon facts comparable to those now before this Court the issue of abandonment has been resolved in favor of the taxpayer. See C. V. Connellee (1926) 4 BTA 359, wherein it was held that the taxpayer was entitled to deduct a building foundation as a loss even though it had become a part of the realty. See also, Commissioner v. McCarthy, 129 F.2d 84 (7th Cir. 1942); S. S. White Dental Mfg. Co. v. United States, 55 F.Supp. 117 (Ct.Cl.1944); Newport v. United States, 34 F.Supp. 588 (E.D.Wis.1940); Seminole v. Commissioner, 19 T.C. 259 (1952).

That the fill and partial foundation walls on the building site were of no value in 1958 but were, on the contrary, a net detriment to the value of the real property because they were suitable only for the particular, abandoned building project has also been established in this case by the testimony, not only of the taxpayer, Robert Hummel, but of Walden, the 1960 lessee, and in effect by the testimony of Apaydin, the architect for the new 1960 structure. No testimony

to the contrary was produced by the government.

When in 1960, Walden, as lessee, undertook the new development of the property, a provision in the lease required the plaintiff taxpayers to reimburse Walden for his actual costs for removal of these existing improvements on the site up to the sum of $2500. It further appears that Walden believed that this removal expense would actually exceed $2500.

The architect, Apaydin, testified that the fill dirt on the site would be worth nothing to the taxpayers and that they would have had to pay in order to have it hauled away. Its potential use on the site was dependent entirely upon a pure speculation whether some eventual building purpose would require fill instead of excavation. In this case the soil engineers found that the fill on the site would all have to be removed and recompacted according to certain specifications, before it would be usable and the taxpayers' 1960 building contract with Lathrop so provided, allocating $14,228 for "Excavation, Grade, Fill and Demolition"—an amount greater than the $12,345 cost of bringing the fill to the site in the first place.

It is true that the architect found that the rear wall could be saved and that it was used as a retaining wall in the 1960 structure. We are of the opinion, however, that the likelihood in 1958 that such a partial rear wall designed for one particular building could or would be usable in connection with some different building designed for another purpose was so remote that an eventual fortuitous use of it for a radically different purpose should not be made the basis of a hindsight finding that the rear wall for the fill, instead of being worthless on the site in 1958, had in fact a salvage value to the taxpayers in that year.

That a mere "remote" possibility of future use does not necessarily preclude abandonment has been recognized. (See, Citizens Bank of Weston v. Commissioner, 252 F.2d 425 (4th Cir. 1958)).

We find, therefore, upon the evidence in this particular case that the taxpayers abandoned the rear wall and fill as mere residue of the discontinued building project and that at the time of the abandonment these items had no further reasonably anticipated salvage value to them.

Plaintiff will prepare, serve and present proposed findings, conclusions and judgment accordingly.