## COMMISSIONER OF INTERNAL REVENUE v. McCARTHY.

### No. 7898,

Circuit Court of Appeals, Seventh Circuit.
July 8, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Louise Foster, Sp. Assts. to Atty. Gen., and J. P. Wenchel and Roy N. McMillan, both of Washington, D. C., for petitioner.

Robert F. Carey and John D. Clancy, Jr., both of Chicago, Ill. (Howard R. Brintlinger, and Patrick S. Filter, both of Chicago, Ill., of counsel), for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Commissioner challenges a decision of the Board of Tax Appeals permitting the taxpayer to deduct as a loss under § 23(e) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 23(e), his investment in a parcel of real estate claimed to have been abandoned by him during that tax year.

The facts, as stated by the Board in its findings, were that the taxpayer, respondent, together with one John McCabe, purchased an unimproved corner lot in the year 1930. Respondent took title to the property. Of the purchase price of $41,850, the taxpayer paid $17,850, and McCabe $5,000, in cash. The balance was defrayed by delivery of respondent's notes for $19,000, payable in five years, secured by mortgage executed by him on the property. It was understood between respondent and McCabe that they should hold equal interests in the property, and that McCabe would make contributions to respondent to make up his half of the investment. The transaction was entered into for profit, the plan being to erect a gasoline filling station on the property, to be operated by others under lease. This was done in 1932, at a cost of $3,838, of which respondent furnished $1,550, and McCabe the balance.

Respondent left the entire management of the property to McCabe, and permitted him to collect the rent which was used to pay interest on the mortgage and some expenses, but it was never sufficient to pay taxes, and none were ever paid. McCabe reported the entire income on his tax return and respondent never received any income from the property.

The Board found that, "The petitioner soon realized that the purchase had been unwise and would probably result in a loss. He made no efforts to sell the property because he thought they would be unavailing." It also found that, "Although legal title to the property was transferred several times, whoever held the legal title did so for the benefit of the petitioner and McCabe."

In February, 1936, respondent and McCabe "signed a writing which was as follows:

"Be It Known that Emmett J. McCarthy and John McCabe have heretofore had a half interest in the following described property: * * * which property cost about $42,000.00 originally, and which is now encumbered with a $19,000.00 mortgage. Such property is now subject to unpaid taxes for past years, and, in addition, it is contemplated that the mortgage should be refinanced and certain improvements placed on the land to permit earnings to pay carrying expenses. Since acquisition the property has depreciated in value over 50% and is now worth only about the amount of the existing mortgage. Emmett J. McCarthy is unwilling to pay out additional moneys for back taxes, new improvements, etc., and in view of the fact he considers his present investment (including his personal indebtedness of approximately $10,-000.00 to the Receiver of the Bain Banks) as a total loss, and not wishing to have any further connection with the property, it has been agreed between the parties hereto that hereafter the said Emmett J. McCarthy shall have no interest whatsoever in said property and that John McCabe shall be the exclusive owner thereof insofar as Emmett J. McCarthy or any claim by or through him is concerned."

The Board found that at the time, respondent believed that he had a loss on the property and that, by signing the instrument, he would be enabled to deduct the loss for income tax purposes.

Subsequently, in 1940, the mortgagee learned that taxes had never been paid on the property and notified respondent that the mortgage would have to be paid. According to the terms of the compromise agreement, respondent paid $12,500 and received back the mortgage and notes amounting to $19,000 in 1940.

Pursuant to the original agreement between respondent and McCabe, that the latter would reimburse respondent for his half of the purchase price, McCabe paid amounts totalling $6,100 prior to the February 1936 instrument, and $2,917 thereafter, up to October, 1939.

The taxpayer claimed a deduction of $17,850, his original cash outlay on the property, from his gross income for the year 1936. The Board allowed a deduction of $10,383, reducing his total cash outlay of $19,400 (exclusive of the amount paid in settlement of the mortgage) by the total payments of McCabe amounting to $9,017.

Section 23 of the Revenue Act of 1936 under which the taxpayer claims the deduction, provides that in computing net income there shall be allowed as deductions: "(e) In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise * * * (2) if incurred in any transaction entered into for profit, though not connected with the trade or business * * *." Treasury Regulations 94 promulgated thereunder provide that, "In general losses for which an amount may be deducted must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed."

Respondent's theory, sustained by the Board, was that the signing of the instrument of February 6, 1936, constituted the identifiable event closing the transaction and fixing his loss as of that date. Hence neither respondent nor the Board has made any attempt to show that the facts responsible for the depreciation in value of the property which led him to attempt to close the transaction by that instrument occurred in the year 1936.

The Commissioner, on the other hand, in effect, contends that to establish a loss by abandonment, the taxpayer must prove the concurrence of an act sufficient to effect such abandonment, and acts or facts causing the loss claimed within the year in which the deduction therefor is claimed. Hence he contends that the absence of any finding by the Board as to when the alleged loss occurred is fatal to the deduction claimed. Without conceding that the instrument of February 6 effected an actual abandonment of respondent's interest in the property, petitioner asserts that even if it did, it was not, of itself, proof of loss. He distinguishes between the effect of a sale and an abandonment for the purpose of establishing a loss for tax purposes, calling attention to the fact that in the case of

a sale, it is enough to show merely that there has been one for less than cost, in order to entitle the loser to the deduction, while in the case of an abandonment, he argues that it is essential to prove worthlessness during the year in which the property is abandoned.

It is true, as petitioner states, that there is no specific finding by the Board as to when or how the loss occurred. Neither is there any specific finding as to the state of title to the property. The only references to title are that " * * * petitioner * * * took title," and "although legal title to the property was transferred several times, whoever held the legal title did so for the benefit of the petitioner and McCabe." Hence we are not informed whether it was the legal title or the equitable title respondent sought to repudiate by his instrument of February, 1936. Neither have we any way of knowing what was done with the instrument after the two men signed it—whether it was delivered to McCabe or retained in McCarthy's possession, or whether it was filed of record. And inasmuch as it does not even purport to recite consideration, and the taxpayer and Board agree that none was given, its effectiveness to divest respondent even of an equitable interest is open to serious question.

We also note a discrepancy in the findings as to the value of the property at the time of the alleged abandonment. There is a specific finding that the "fair market value of the property at that time was substantially less than the amount of the mortgage." However, the instrument itself recites that, "Since acquisition the property has depreciated in value over 50% and is now worth only about the amount of the existing mortgage." In view of the fact that the record itself does not indicate upon what evidence the findings were based, whether there was a stipulation of facts, or oral or documentary evidence, we have no means of determining whether there was any evidence to support the finding of an unspecified value "substantially less than the amount of the mortgage."

The absence of a finding of actual value of the property appears to us to be a matter of considerable importance in view of the well-established principle that deductions are not allowable for mere fluctuations in value. Our study of comparable cases convinces us that where a loss is claimed by reason of abandonment of worthless property, it has been necessary in all cases to establish the absolute worthlessness of the claimant's interest in the property.

In the case of Rhodes v. Commissioner, 6 Cir., 100 F.2d 966, the taxpayer was permitted a deduction upon a showing of loss caused by a combination of the collapse of the land boom in Florida where land had been bought for purposes of speculation, and the destructive effects of two hurricanes upon the land. In Denman v. Brumback, 6 Cir., 58 F.2d 128, the deduction was permitted upon a showing of abandonment by charging off the books as an asset, the taxpayer's interest in undeveloped land after a special tax assessment for an irrigation project rendered his interest in the land a liability with which he no longer wished to be burdened. The assessment was held to be the identifiable event establishing the worthlessness of his interest in the land.

In Hoffman v. Commissioner, 40 B.T.A. 459, affirmed 2 Cir., 117 F.2d 987, the taxpayers owned a tenement property which they operated at a diminishing profit from 1928 to 1933, suffering an operating loss for the first time in 1934, in which year the enactment of a state law requiring certain structural changes would have necessitated the expenditure of $8,000 if they continued to operate the property. The fair market value at the time was $65,000, and it was encumbered by a mortgage of $80,000, and in addition, there were taxes and water rents amounting to $5,500. Foreclosure proceedings were instituted and a receiver appointed in November, 1934, whereupon the taxpayers cancelled insurance and utility contracts on the property, receiving refunds for premiums and deposits. The Court of Appeals for the Second Circuit agreed with the Board that these facts sufficiently established that the taxpayers' interest became worthless in 1934, and approved the deduction for the loss despite the fact that the title remained in them until the following year. However, in Commissioner v. Abramson, 2 Cir., 124 F.2d 416, 417, the same court held that in a somewhat similar situation, the Board was correct in disallowing the deduction claimed, stating, "This situation differs in that here the taxpayers did not prove that in 1934 their equity ceased to have any value and we are not disposed to extend the decision in the Hoffman case beyond its own facts. * * * Nor did they prove any

abandonment before the foreclosure suit was commenced."

The rule to be deduced from the "abandonment" cases, we think, is that a deduction should be permitted where there is not merely a shrinkage of value, but instead, a complete elimination of all value, and the recognition by the owner that his property no longer has any utility or worth to him, by means of a specific act proving his abandonment of all interest in it, which act of abandonment must take place in the year in which the value has actually been extinguished. Applying this rule to the facts of the case at bar, we are convinced that the taxpayer has established neither element essential to his right to the deduction claimed. In the absence of any facts showing even shrinkage of value in the year 1936, to say nothing of extinction of value in that year, his proof of nothing but the act alleged to show abandonment is insufficient to entitle him to the deduction claimed, and the decision of the Board in allowing that deduction was, therefore, in error.

We are not unmindful of the fact that the findings of the Board have great weight and are not to be lightly disturbed. However, where, as here, there are no specific findings of essential facts, and the decision appears to be based on an error of law, we are not bound by that decision. We are not questioning whether the evidence supports the findings, in the absence of such evidence from the record, but we do question whether the findings support the conclusions, and are convinced that they do not.

The decision is reversed, and the cause remanded to the Board for further proceedings.