Milton K. Joseph and Lillian T. Joseph v. Commissioner.
Joseph v. Commissioner
Docket No. 6433-66.
United States Tax Court
T.C. Memo 1969-106; 1969 Tax Ct. Memo LEXIS 189; 28 T.C.M. (CCH) 568; T.C.M. (RIA) 69106; May 21, 1969, Filed Milton K. Joseph, pro se, 120 S. LaSalle St., Chicago, Ill. Lewis M. Porter, Jr., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the Commissioner in the income tax of petitioners for the taxable year 1963 in the amount of $22,936.78. The sole issue to be decided is whether respondent has erred in disallowing a loss deduction *190 taken by petitioners in their income tax return for 1963 under section 165 of the Internal Revenue Code of 1954. Findings of Fact All of the stipulated facts are found accordingly. Petitioners Milton K. Joseph and Lillian T. Joseph are husband and wife, residing during the taxable year in question and also at the time their petition was filed at Glencoe, Illinois. Their joint Federal income tax return for the calendar year 1963 was prepared and filed on the cash receipts and disbursements method with the district director of internal revenue at Chicago, Illinois. On February 1, 1962, Milton K. Joseph, hereinafter referred to as petitioner, Lawrence H. Metcoff, and William S. Metcoff acquired vacant land located at the northwest 569 corner of River Road and Balmoral Avenue, Rosemont, Illinois. On January 11, 1962, title to the land was conveyed to the Harris Trust and Savings Bank as trustee under trust No. 30571. The beneficial interest under the trust consisted of a power of direction to deal with the title to such property and to manage and control the property as provided in the trust agreement. The beneficiaries of the trust were the above-named *191 purchasers, each of whom owned a one-third interest. Petitioner's investment in the above property amounted to $75,407.41. On January 19, 1962, Airport Recreation Center, Inc., was formed by petitioner and Lawrence and William Metcoff. On April 2, 1962, a construction contract was entered into between James Burton Company as contractor, and Airport Recreation Center, Inc., as agent, for the beneficiaries of Harris Trust and Savings Bank trust No. 30571 as owners to improve the property held in that trust. The contract called for progress payments by the three trust beneficiaries as construction of such improvements progressed. Construction begun prior to June 29, 1962. On June 29, 1962, an agreement was made by and between James Burton Company as contractor, the trust beneficiaries as owners, and Airport Recreation Center, Inc., as agent, wherein the contractor agreed to forbear demanding progress payments due until the close of business August 31, 1962, in exchange for an assignment of the beneficial interest in the land trust to secure such unpaid progress payments. The trust beneficial interest in the land trust to secure such unpaid progress payments. The trust beneficiaries *192 as owners also personally guaranteed to the contractor payment of all amounts due under the construction contract on or before September 1, 1962. On June 29, 1962, pursuant to the forbearance agreement, petitioner and the Metcoffs assigned all of their rights in the beneficial interest in trust No. 30571 to the contractor. On September 5, 1962, the contractor requested partial payment for work done through September 1, 1962, on such improvements in the amount of $690,660. On September 10, 1962, the contractor notified petitioner and the Metcoffs as beneficiaries and Harris Trust and Savings Bank as trustee (sometimes hereinafter referred to as the owners), that pursuant to the forbearance agreement dated June 29, 1962, they were in default of the payment required to be made on or before September 1, 1962, and made demand upon the owners for the full amount due. No part of any payment required to be made pursuant to the provisions of the forbearance agreement was ever tendered by the owners. Pursuant to the provisions of the forbearance agreement, the contractor caused the beneficial interest in the Harris Trust and Savings Bank trust No. 30571 to be sold at a public sale held *193 on January 30, 1964. The contractor was the only bidder, its bid price being $25,000, for which price the beneficial interest was struck off and sold to it. On January 8, 1963, a mechanic's lien foreclosure suit entitled, "Riemer Bros., Inc., plaintiff, v. Harris Trust and Savings Bank, as trustee under Trust No. 30571, defendant," No. 63C 376, was filed in the Circuit Court of Cook County, Chancery Division. The complaint filed by plaintiff Riemer Bros., Inc., in the foreclosure action sought to establish and assert plaintiff's claim for mechanic's lien and to enforce such lien against the property held in Harris Trust and Savings Bank trust No. 30571. Subsequent to the filing of this suit, the prime contractor, James Burton Company, various subcontractors and contractors filed their answers and intervening petitions or counterclaims in the mechanic's lien foreclosure action. The following is a list of successful claimants in the mechanic's lien foreclosure action indicating whether they are contractor or subcontractor and indicating the date of completion for furnishing labor and/or materials, the date notice of lien was filed on the owners, the date claim for mechanic's lien was *194 filed, the date suit to enforce the mechanic's lien was filed, the amount of claim allowed, the date from which interest at the rate of 5 percent accrued, the amount due in the decree entered November 6, 1967, and the amount due on the date of sale, January 15, 1968: 570 Claimants
Type of [1]
Date of
Notice of
Mech.'slien
Suit to
contractor
completion
lien filed
filed
enforce
on owners
lien filed
James Burton Co.
G
12/ 7/62
12/14/62
[2]
Riemer Bros.,
S
9/ 8/62
[3]
11/30/62
1/ 8/63
Inc.
Western
K
10/28/62
1/23/63
10/23/64
Ventilating Co.
Material Service
S
8/18/62
10/11/62
11/26/62
7/16/64
Div.
9/ 6/62
11/ 5/62
11/26/62
7/16/64
Imperial Concrete
S
8/16/62
10/11/62
10/11/62
2/20/64
Constr. Co.
(O'Hare
Industrial
Concrete Co.)
American Metal
S
8/14/62
9/11/62
11/ 1/62
10/ 7/63
Climax, successor
interest to to
claim of Crest
Con- crete
Systems, Inc.
Wendnagel and Co.
S
6/19/62
8/15/62
10/19/62
10/ 7/63
Hamilton Glass
S
12/15/62
2/13/63
2/25/63
4/24/63
Co.
Kenwood
S
8/21/62
10/11/62
10/11/62
11/8/63
Construction Co.
Marcus Weil &
K
3/22/63
10/9/62
5/28/64
Sons Co.
Nachman, Vragel &
S-1
[4]
11/14/62
12/17/62
9/30/64
Assoc.
Eugene Dubin
K
[5]
11/ 8/63
12/20/62
11/ 8/63
Hultgren Electric
K
[5]
12/13/62
11/26/63
Co.
*195 Claimants
Amount of
Interestat
Amount due
Amount due
claim
5% from
in decree
date of sale
allowed
11/ 6/67
1/15/68
James Burton Co.
$164,936.97
12/ 7/62
$205,720.54
$207,720.31
Riemer Bros.,
25,864.92
9/8/62
32,550.48
32,866.71
Inc.
Western
8,613.49
10/28/62
10,780.16
10,884.56
Ventilating Co.
Material Service
Div.
241,989.71
10/10/62
303,384.83
306,333.97
Imperial Concrete
55,885.79
8/16/62
70,481.97
71,167.10
Constr. Co.
(O'Hare
Industrial
Concrete Co.)
American Metal
104,200.00
8/14/62
131,440.50
132,718.19
Climax, successor
interest to to
claim of Crest
Con- crete
Systems, Inc.
Wendnagel and Co.
43,250.00
6/19/62
54,883.25
55,406.76
Hamilton Glass
3,331.97
12/15/62
4,155.74
4,196.02
Co.
Kenwood
37,447.95
8/21/62
47,203.81
47,663.66
Construction Co.
Marcus Weil &
11,645.00
14,338.36
14,447.85
Sons Co.
h3/23/63
Nachman, Vragel &
22,041.90
12/14/62
27,473.48
27,741.00
Assoc.
Eugene Dubin
14,852.79
9/ 9/62
18,691.47
18,873.16
Hultgren Electric
6,922.18
8/24/62
8,725.73
8,809.76
Co.
740,982.67
929,830.32
938,859.05
*196 571 To the answer and intervening petition of both Crest Concrete Systems, Inc., and Wendnagel and Company, Inc., in the mechanic's lien foreclosure action filed October 7, 1963, Milton K. Joseph and Airport Recreation Center, Inc., defendants to the intervening petition, in their answer which was filed November 20, 1963, neither admitted nor denied the allegations of the intervening petitioners that they had complied with the requirements of the Illinois Mechanic's Lien Act and demanded strict proof thereof. To the allegations by the intervening petitioners that Milton K. Joseph and Airport Recreation Center, Inc., then owned an interest in the trust-held real estate in question, which was subject, subordinate, and inferior to the rights of Crest Concrete Systems, Inc., and Wendnagel and Company, Inc., petitioner in his answer admitted that he had an interest in the real estate described in the intervening petition as one of the beneficial owners under the trust agreement referred to therein and stated further that the order of priority between his interest and also that of Airport Recreation Center, Inc., and of Crest Concrete Systems, Inc., and Wendnagel and Company, Inc. *197 , was a matter to be determined by the court upon the trial of the issues raised by the intervening petition. On August 5, 1966, petitioner filed a motion in the mechanic's lien foreclosure proceeding asking leave to reopen proofs as to him and had notice thereof served on all other interested parties. On August 9, 1966, the court in the mechanic's lien foreclosure action served notice on all interested parties that a hearing on the motion for leave to reopen proofs was set for August 19, 1966. The master in chancery in the mechanic's lien foreclosure proceeding filed his report on May 29, 1967. On November 6, 1967, the court entered its decree approving the master's report as modified by order of the court and adopted his findings of fact as the findings of the court. On January 15, 1968, the property contained in Harris Trust and Savings Bank trust No. 30571 was sold at public auction for $610,000. On February 21, 1968, the court in the mechanic's lien action entered its decree approving the master's report of sale and distribution. Ultimate Findings Petitioner's interest in the property in question did not become worthless at any time during the taxable year 1963 and there *198 was no affirmative act by petitioner indicating a purpose to repudiate ownership in that year. Petitioner did not abandon his interest in the property in question during the taxable year 1963. There were no definitive events evidencing a closed and completed transaction during the year 1963 which would establish petitioner's loss in that year. Opinion The petitioner has not favored us with a brief herein with the result that, except for his opening statement, we are not advised as to his theory regarding the issue raised by the pleadings. In his return, petitioner has deducted a loss equal to his investment in the property involved herein. He there designates the loss as one suffered by him during 1963 in a nonbusiness transaction entered into for profit. Respondent does not dispute that the transaction was properly designated but contends that no loss occurred in connection therewith during that year. Under section 165(a)[1] of the 1954 Code and section 1.165-1(a) and 1.165-1(d), [2] Income Tax Regs., any loss to be deductible must be sustained during the taxable year in which it is deducted. Under subsection (d) of that regulation, closed and 572 completed transactions *199 evidenced by identifiable events are the criteria necessary to be shown in order to fix the time when a deductible loss occurs. Petitioner's proofs are nearly completely lacking in the latter categories. *200 The foreclosure and sale of his interest in the trust described in our findings did not occur until January 30, 1964. The events which are shown to have occurred in 1962 and 1963 which would constitute a threat to petitioner's investment in the improvements being constructed were the filing of mechanic's liens with respect to materials and labor furnished in connection therewith. These totaled in aggregate $740,982.67 as finally allowed by court decree dated November 6, 1967. Of that amount, as of December 31, 1963, suits to enforce liens had been instituted, either directly or by intervention, representing only $235,869.81 thereof. As of September 5, 1963, the contractor had furnished labor and materials in connection with improvements either directly or through subcontractors or material men in the amount of $702,400, which figure we find on the record before us was at least the value of the improvements constructed upon the property as of December 31, 1963. Under Illinois law, unless suit is instituted by the contractor or subcontractor to enforce a claimed mechanic's lien within 2 years of the date of completion of his work, or the last delivery of materials, the lien holder *201 is deprived of his right to enforce collection against the property involved. Ill. Ann. Stat., ch. 82, par. 28 (Smith-Hurd 1966). As of December 31, 1963, as we have noted above, the remaining unencumbered value of the property far exceeded the aggregate amount of the liens which had been safeguarded by the institution of suits. The remaining value also far exceeded petitioner's investment which he here seeks to deduct as a loss. We are therefore unable to find that the property in which petitioner had invested was worthless as of that date or that there existed a completed transaction of any kind whereby petitioner had suffered the loss of his investment. In his return petitioner indicated that he had abandoned his interest in the property in question due to inability to obtain financing for completion of construction thereon. In the first place, this record lacks any evidence whatsoever with respect to either efforts made in that regard or with respect to future possibilities with respect thereto. It might well be that as of the close of 1963, the obtaining of financing from hitherto untried sources was still possible. In the second place, it is well established that a unilateral *202 abandonment of real estate in order to support a loss deduction must be actual and evidenced by an identifiable act of abandonment, or an identifiable event from which the act of abandonment may be reasonably inferred. Commissioner v. McCarthy, 129 F. 2d 84 (C.A. 7, 1942); Stanley Burke, 32 T.C. 775 (1959). Petitioner has shown no such act here. In fact, the record amply supports a finding that as of December 31, 1963, he had not formed an intention to abandon the property or his investment therein, for even as late as August 5, 1966, petitioner was contesting foreclosure of the mechanic's liens referred to above. We find this to be inconsistent with any real intention to abandon his investment. In sum, even though petitioner's investment may have been faring badly in 1963, he has not shown its worthlessness during that year or any act or event from which an abandonment thereof may be reasonably inferred. Decision will be entered for the respondent. Footnotes
1. G--general contractor; S--subcontractor; S-1--subcontractor (entered into contract with James Metcoff who had contracted to do architectural services for owners); K--contractor (entered into contract with owners). ↩
2. Filed answer to intervening petition of Imperial Concrete Constr. Co. on 3/11/64, amended answer and counterclaim on 10/28/64, and second amended answer on 12/29/65. ↩
3. Complaint contains no allegation of having served notice of lien on owners and master's report makes no finding that such notice was served although complainant a subcontractor. See Ill.Ann.Stat., ch.82, par.24 (Smith-Hurd 1966). ↩
4. Filed both notice of lien on owners and claim for mechanic's lien prior to completion of services under contract. ↩
5. Master's report makes no finding as to date of completion; however, claim for mechanic's lien apparently was timely filed.↩
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. ↩
2. SEC. 1.165-1 LOSSES. (a) Allowance of deduction. Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of the deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder. For the disallowance of deductions for worthless securities issued by a political party, see section 1.271-1. (d) Year of deduction. (1) A loss shall be allowed as a deduction under section 165(a)↩ only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * *