ANDRE and RUTH FISCELLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fiscella v. Commissioner
Docket No. 2202-73.
United States Tax Court
T.C. Memo 1976-120; 1976 Tax Ct. Memo LEXIS 283; 35 T.C.M. (CCH) 548; T.C.M. (RIA) 760120; April 20, 1976, Filed Morris A. Kaplan, for the petitioners. Michael P. Casterton,Bernard Goldstein, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in the joint Federal income tax returns of petitioners for the taxable years 1968 and 1969 in the amounts of $10,443.11 and $5,376.01, respectively. Due to concessions by the parties the issues for our decision are as follows: (1) Whether petitioners abandoned their franchise in the taxable year 1968 thereby sustaining a loss. [1]
*284 (2) Alternatively, whether petitioners are entitled in each of the years 1968 and 1969 to a deduction for amortization of the franchise. FINDINGS OF FACT Some of the facts have been stipulated. Such facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Andre and Ruth Fiscella, are husband and wife. At the time of the filing of the petition herein they resided in Middletown, New York. They filed joint Federal income tax returns for the taxable years 1968 and 1969 with the District Director of Internal Revenue, Albany, New York, using the cash method of accounting. Andre Fiscella is a physician. For some years prior to 1967, petitioners had been looking for an investment which would result in additional income to them, particularly for the years when their children were in college. On or about July 12, 1967, petitioners entered into an agreement with Drive In Management Corporation (hereinafter sometimes referred to as "Carrols"). Under the terms of such agreement, petitioners acquired from Carrols, a territorial franchise in the State of New Jersey for a period of 20 years, with the option of extending the agreement for an additional *285 period of five years. The agreement was signed by petitioners as individuals. The cost to petitioners of acquiring such franchise aggregated $80,300, consisting of the purchase price of $75,000 plus $5,300 of legal fees. Under the terms of said agreement, petitioners, as franchisee, were granted the exclusive franchise to secure licensees in the designated territory for "Carrols Drive Ins" upon certain conditions and were also granted licenses to maintain and operate their own Carrols Drive Ins either as an individually owned operation, or through a partnership or corporation in which they had a controlling interest. Petitioners were not empowered to enter into any license agreements. Each licensee was required to enter into a license agreement with Carrols and pay a store opening fee which varied depending on whether the particular licensee was the franchisee (or a corporation or partnership controlled by the franchisee) or an outsider. The agreement further provided that petitioners, as the franchisee, would receive from Carrols a fixed percentage of store opening fees which would become payable to Carrols by any licensees upon the opening of a Carrols Drive In, plus $500 *286 each year for each store in operation, plus a royalty of.8 percent of gross sales. Without the approval of Carrols, petitioners could not assign their agreement or their rights under the agreement unless they assigned the rights to a company wholly owned by them. In the case of bankruptcy, Carrols could terminate the franchise agreement without further notice. Petitioners, concurrently with the execution of the aforesaid agreement, caused to be organized a corporation known as Fis-Cop Holding Co., Inc., (hereinafter sometimes referred to as "Fis-Cop"), which was to act as a holding company of all the capital stock of any corporation which would be subsequently organized to operate a Carrols Drive In. Between July 1967 and the first half of 1968, Fis-Cop organized and owned all of the capital stock of five separate corporations which were to operate Carrols Drive Ins. Each of the five subsidiary corporations had to pay a store opening fee of $5,000 as licensee. During the time that they were involved with Carrols, petitioners did not attempt to get any outsiders to open up Carrols Drive Ins in their franchised territory. Carrols had tol petitioners that the drive ins "were *287 such good money making stores" that it would be advisable for petitioners to operate them. Carrols also indicated to petitioners that they would provide them with a good supervisor. Mrs. Fiscella maintained an active role in the various business communications to and from Carrols and with other individuals, but generally petitioners remained separate from the day-to-day operation of the five drive ins. Carrols provided petitioners one of their former employees to manage the drive ins. However, in the spring of 1968, the manager was relieved and Mrs. Fiscella went to New Jersey and personally attempted to run the drive ins. All five of the drive ins soon experienced severe financial reverses, thereby causing Fis-Cop to file a petition in bankruptcy under Chapter XI of the Bankruptcy Act, on or about July 1, 1968. As of October 28, 1968, Carrols became the successor for purposes of the New Jersey employees disability insurance, to the five corporations which had been organized by Fis-Cop. In this connection, the treasurer of Carrols agreed to assume the obligations and liabilities of the predecessors commencing October 28, 1968. On or about November 6, 1968, Fis-Cop was *288 adjudicated a bankrupt. The bankruptcy papers show that at that time Fis-Cop had assets of $85,666 and liabilities of $98,447 with no present value assigned to the capital stock of the five subsidiaries. Each of the five subsidiaries showed an excess of liabilities over assets. Four of the five subsidiaries showed an amount owed to Fis-Cop in the amount of $12,000 and Fis-Cop showed a corresponding accounts receivable due from the four subsidiaries of $48,000 for security deposits advanced for their accounts to the Drive In Management Corporation. The bankruptcy papers also reflect a loan from petitioners to Fis-Cop in the amount of $15,374.03. After the bankruptcy, all five drive ins were closed. Petitioners, because of the bankruptcy of Fis-Cop and because of family problems, decided to get themselves out of a difficult situation and to forget about the franchise. They ceased all work at the five drive ins and walked away. Carrols took over the five drive ins and has never rendered an accounting to petitioner with respect thereto. Petitioners have not subsequently received any money with respect to the franchise nor have they attempted to sell it. Since 1968, drive ins in *289 the territory covered by the franchise agreement of July 12, 1967, have been operated either by Carrols or by a licensee of Carrols whose license extends only to the particular location. As a result of the bankruptcy of Fis-Cop and the discontinuance of the business operations of the five subsidiary corporations with the resultant failure to make the required rental and other payments to Carrols, Carrols through its subsidiaries instituted nine separate actions on or about September 24, 1968, against petitioners, all of which are still pending. Such suits are based on two separate causes of action: First, that petitioners are liable as the allege d guarantors for the operating corporations and secondly, that petitioners assumed personal liability on equipment leases. Petitioners have filed counterclaims for $300,000 against Carrols for fraud and misrepresentation. On their 1968 income tax return petitioners claimed an ordinary loss on the franchise venture in the amount of $80,300.The respondent determined that the loss is not allowable because petitioners did not establish that the franchise became worthless or was abandoned during the taxable year 1968. OPINION Petitioners *290 invested $80,300 in 1967 for a 20 year territorial franchise from Carrols. Shortly after the signing of the franchise agreement in July 1967, petitioners incorporated Fis-Cop Holding Company, Inc. and five subsidiary corporations which were licensed to do business as Carrols Drive Ins. During 1968, the five corporations experienced financial difficulties, thereby causing Fis-Cop, in July 1968 to file a petition in bankruptcy. On or about November 6, 1968, Fis-Cop was adjudicated a bankrupt, and all five operating drive ins were closed. Subsequently, through its subsidiaries Carrols instituted various lawsuits against the petitioners, all of which are still pending. Petitioners have filed counterclaims against Carrols in these actions for damages of $300,000 for fraud and misrepresentation. Petitioners contend that their franchise being worthless, they abandoned it in 1968 and are entitled to a loss in that year of $80,300 pursuant to section 165(a). [2] Respondent argues that neither the worthlessness nor the abandonment in 1968 has been established. Section *291 165(a) permits the deduction of "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Recognizing that a loss deductible under section 165 may occur on the abandonment of property, section 1.165-2(a), Income Tax Regs., states: (a) Allowance of deduction. A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a) for the taxable year in which the loss is actually sustained. For this purpose, the taxable year in which the loss is sustained is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs. In order to claim an abandonment loss, the taxpayer must demonstrate an intention to abandon the property together with an act of abandonment. These requirements, plus a determination of the year in which the loss is sustained, must be ascertained from all the facts and *292 circumstances. Massey-Ferguson, Inc.,59 T.C. 220 (1972); Burke v. Commissioner,283 F.2d 487 (9th Cir. 1960); affg. 32 T.C. 775 (1959). On the basis of the record in this case, it appears that in the taxable year 1968 the petitioners abandoned all intention to proceed with the development of the Carrols Drive In franchise. The drive ins were closed in 1968. At that time all five operating corporations were insolvent, as was Fis-Cop, the holding company. Carrols took over the drive ins and since 1968, drive ins in the territory covered by petitioners' franchise agreement have been operated by Carrols or their licensees. Mrs. Fiscella testified that the petitioners entertained no hope of recovery on their counterclaims to the suits instituted by Carrols and that such counterclaims were filed merely as a defensive measure. Although Carrols is still pursuing the matter, under the circumstances of this case, the existence of pending litigation is not sufficient to postpone the loss. See United States v. White Dental Co.,274 U.S. 398 (1927); Parmelee Transportation Company v. United States,351 F.2d 619 (Ct. Cl. 1965); *293 section 1.165-1(d) (2), Income Tax Regs.
The petitioners admittedly paid $80,300 to acquire a territorial franchise. As of the close of the taxable year 1968, they had lost everything. To them, the franchise had no value. The petitioners abandoned any attempt to further exploit the franchise. Accordingly, petitioners sustained an abandonment loss in 1968 amounting to $80,300. Boehm v. Commissioner,326 U.S. 287 (1945); United States v. White Dental Co.,supra;A. J. Industries, Inc. v. United States,388 F.2d 701 (Ct. Cl. 1967); cert denied 393 U.S. 833 (1968); A. J. Industries, Inc. v. United States,503 F.2d 660 (9th Cir. 1974). Our conclusion that the petitioners suffered a loss in 1968 on the abandonment of their franchise, makes it unnecessary for us to decide petitioners' alternative contention. In accordance with the above, Decision will beentered under Rule 155.
Footnotes
1. On brief the respondent concedes for purposes of this case that if the franchise is found to have been worthless or abandoned in 1968, the petitioners are entitled to an abandonment loss for that year.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩