ESTATE OF WALTER P. MYERS, DECEASED, NORTHWEST NATIONAL BANK OF CHICAGO, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Myers v. Commissioner
Docket No. 11706-79.
United States Tax Court
T.C. Memo 1981-384; 1981 Tax Ct. Memo LEXIS 359; 42 T.C.M. (CCH) 485; T.C.M. (RIA) 81384; July 28, 1981. *359 In response to a request by T's employer that T find work space outside of employer's place of business, T constructed a design studio attached to his personal residence. When T's employment was terminated, T claimed an abandonment loss in the amount of the remaining undepreciated basis of the studio. Held, petitioner failed to carry its burden of establishing that the design studio lost all value as an asset used in T's trade or business in 1975. Larry D. Blust and Francis J. Wirtz, for the petitioner. Anita Gottlieb, for the respondent. EKMAN
MEMORNADUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined a deficiency in taxpayer's Federal income tax for 1975 in the amount of $ 32,901.66. Due to concessions by respondent, the sole issue remaining for decision is whether a design studio became worthless and was permanently withdrawn from taxpayer's trade or business so as to entitle taxpayer to a loss deduction. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Taxpayer Walter P. Myers (hereinafter decedent) timely filed his Federal income tax return for 1975 with the Internal Revenue Service Center in Kansas City, Missouri. Northwest National Bank of Chicago (hereinafter petitioner) is the *361 executor of the state of Walter P. Myers who died on March 23, 1979. At the time the petition in this case was filed, petitioner had its principal place of businee in Chicago, Illinois. From 1968 until June 1975 decedent was employed by Duer Tube Bending Company (hereinafter Duer) as vice president, designer, and sales manager. As a result of friction between Duer's management and decedent, Duer requested in 1969 that decedent find space outside of Duer's place of business where decedent and other Duer employees under his supervision could continue to be employed by and work for Duer. Thereupon, decedent constructed a studio addition to his residence. Duer agreed to lease the studio space from decedent. The Studio is a glass enclosure above the family room and attached garage of decedent's residence. The only access to the studio is by means of a spiral staircase leading up from decedent's family room. There is no access to the studio from the second floor of decedent's residence or from the outside of decedent's residence. Following construction of the studio in 1969, decedent and several other Duer employees used the studio as their principal work space. Duer paid decedent *362 the agree rental of $ 9,600 per year which amounts were included by decedent as rental income on his Federal income tax returns. Duer continued to rent the studio until June 1975 when Duer terminated decedent's employment and canceled the lease of the studio. On his 1975 Federal income tax return decedent wrote off the remaining undepreciated cost basis as an abandonment loss claiming that the termination of his employment and the inability to rent the studio profitably had caused the studio to become worthless. In constructing the attached studio, decedent incurred expenses of $ 81,513.90. From 1969 to June 1975 decedent was allowed deductions for depreciation of the studio and the parties are agreed that the remaining undepreciated basis of the studio, and thus the amount at issue in this case, is $ 64,517.70. OPINION Taxpayers are allowed a deduction for losses sustained during a taxable year if those losses are not compensated for by insurance of otherwise. Section 165(a). For individuals the deduction is limited to certain types of losses, one of which is losses incurred in a trade or business. Section 165(c)(1). If the loss arises from permanent withdrawal of depreciable *363 property from use in the trade or business (i.e., "retirement"), section 1.165-2(c), Income Tax Regs., directs us to section 1.167(a)-8, Income Tax Regs., which provides that withdrawal may be accomplished by several methods. As asset may be permanently retired from use in the trade or business without being disposed of or physically abandoned by the taxpayer, section 1.167(a)-8(a)(3), Income Tax Regs., or it may be retired by actual physical abandonment, section 1.167(a)-8(a)(4), Income Tax Regs. Petitioner seeks to qualify under either of these two subsections of the regulations; however, petitioner must fail. The requirements for physical abandonment have been described in the following words: "For an abandonment loss to be deductible there must be an intention onthe part of the owner to abandon the property, it must have lost its usefulness or value to the owner, and there must be an overt act of abandonment or identifiable event to evidence the abandonment and fix the loss." Ford v. United States, an unreported case ( W.D. Ky. 1967, 20 AFTR2d 5033, 5040-5041, 67-2U.S.T.C. par. 9546, p. 84,737), affd. per curiam 402 F.2d 791 (6th Cir. 1968). Section *364 1.167(a)-8(a)(4), Income Tax Regs., requires that "the intent of the taxpayer must be irrevocably to discard the asset so that it will neither be used again by him nor retrieved by him for sale, exchange, or other disposition." Whether property becomes worthless during a particular year is a question of fact. Rhodes v. Commissioner, 100 F.2d 966 (6th Cir. 1939). Petitioner, of course, has the burden of proving a loss was sustained in the year it is claimed. Burnet v. Houston, 283 U.S. 223 (1931). Petitioner, here, has failed to carry the burden. Mere nonuse of the property is not sufficient to establish an abandonment. Petitioner must establish that the property actually did lose its useful value. Burke v. Commissioner, 32 T.C. 775 (1959), affd. 283 F.2d 487 (9th Cir. 1960). This petitioner has not done. The parties stipulated that the design studio was never rented to anyone after June, 1975, but there is no evidence in the record that the studio could not have been rented. The record discloses that renting to some third party may have been inconvenient because the only means of reaching the studio was through *365 the family room of decedent's home, but mere inconvenience in renting does not render the studio worthless or devoid of useful value. Nor is the testimony of a local licensed real estate broker that the studio added no value to the decedent's personal residence determinative. The question is whether the studio had lost its useful value as a trade or business asset, not whether it added value to the decedent's personal residence. Due to the particular construction of this studio, it would also be extremely difficult, if not impossible, for petitioner to prove decedent intended irrevocably to discard the studio so that it could not be retrieved for sale, exchange, or other disposition. The very fact that the studio was attached to decedent's residence and the only access to the studio was through the decedent's residence tends to negate any intent irrevocably to discard the studio. Any subsequent sale of the residence would, of necessity, result in a disposition of the studio. Furthermore, there was never any overt of identifiable act of abandonment by decedent. [1] Although it is not necessary to our decision, there is evidence in the record that decedent continued to use the *366 design studio on a more or less regular basis up until the time of his death in 1979. While petitioner urges that the later use was different in nature, we find that this fact adds support to respondent's determination that the studio did not lose its value in 1975. We therefore hold that petitioner has failed to prove physical abandonment under section 1.167(a)-8(a)(4), Income Tax Regs.
*367 Petitioner next contends that the design studio was permanently retired from use in decedent's trade or business but was not disposed of nor physically abandoned by decedent. Where an asset is permanently retired from use in the trade or business without disposition or physical abandonment any loss will be recognized only if: (i) The retirement is an abnormal retirement, or (ii) The retirement is a normal retirement from a single asset account * * *, or (iii) The retirement is a normal retirement from a multiple asset account in which the depreciation rate was based on the maximum expected life of the longest lived asset contained in the account. [Section 1.167(a)-8(a)(3), Income Tax Regs.] Since there is no evidence in the record as to the type of account, we cannot accept petitioner's statement on brief that the studio was in a single sset account nor can we find that it was in a multiple asset account within the strictures of section 1.167(a)-8(a)(3)(ii) and (iii), Income Tax Regs. But in any event, petitioner does not claim that a normal retirement occurred. Petitioner, instead, relies upon the provision pertaining to an abnormal retirement. An abnormal retirement *368 occurs when the withdrawal of the asset is due to a cause not contemplated in setting the applicable depreciation rate. Section 1.167(a)-8(b), Income Tax Regs. This can occur if the asset is withdrawn at an earlier time than the end of its estimated useful life. Abnormal retirement can also occur if the asset has been damaged by casualty or has lost its usefulness suddenly as the result of extraordinary obsolescence. Section 1.167(a)-8(b), Income Tax Regs.
The thrust of petitioner's argument is that decedent's studio became worthless upon termination of his employment and the lease, that these terminations were beyond decedent's control, and that, consequently, the retirement of the studio was abnormal. There is no suggestion of casualty, nor did the studio lose its usefulness suddenly as the result of extraordinary obsolescence. Obsolescence is a gradual process whereby property, as a result of external causes, loses its economic usefulness for the purpose for which it was acquired. W.B. Davis & Son, Inc. v. Commissioner, 5 T.C. 1195 (1945). There is not one shred of evidence that the design studion suddenly became unsuitable for use as a design studio. The facts *369 that Duer canceled its lease and that rental to a third party might be inconvenient for decedent do not amount to a loss of economic usefulness of the design studio as a design studio. In summary then, petitioner has failed to carry its burden of establishing that the design studio lost all value as an asset used in decedent's trade or business. While the studio may have been unoccupied at various times, there is no showing of a permanent withdrawal from use in 1975 as required by section 1.167(a)-8, Income Tax Regs.
Decision will be entered under Rule 155. Footnotes
1. While petitioner is correct in asserting that cases such as Tanforan Co., Inc. v. United States, 313 F. Supp. 796 (N.D. Cal. 1970), affd. per curiam 462 F.2d 605 (9th Cir. 1972), and Hummel v. United States, 227 F. Supp. 30 (N.D. Cal. 1963), do not establish a requirement of demolition of a structure in order to accomplish an abandonment, in each of those cases there was an identifiable act of abandonment. In Tanforan, taxpayer terminated all racing, discharged maintenance crews, discontinued maintenance of all Tanforan's facilities, and closed its plant for all practical purposes. In Hummel↩, taxpayer ceased construction of a furniture plant, discontinued the furniture business, and liquidated the corporation through which the furniture business had been conducted. In both cases, taxpayers established more than mere nonuse of the properties. There were clearly identifiable acts of abandonment.